**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

DIANA PADILLA,

           Plaintiff,

vs.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

           Defendant.

Case No: 2:18–cv–02126–VCF

**ORDER**

      This matter involves Plaintiff Diana Padilla's appeal from Defendant Nancy A. Berryhill's final decision denying Padilla social-security benefits. (ECF No. 1-1). Before the Court is Padilla's Motion to Remand (ECF No. 13). In response, Berryhill filed an opposition and Cross Motion to Affirm (ECF No. 16) and Padilla replied (ECF No. 17). For the reasons stated below, the Court denies Padilla's Motion to Remand and granting Berryhill's Motion to Affirm.

## I. BACKGROUND

      This case arises under Title II and Title XVI of the Social Security Act. On July 7, 2015, Padilla filed her application for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416, 423. (*See* Admin. Rec. at 256-65). Padilla's applications were denied upon initial determination. *Id*. at 121-22. On September 4, 2015, Padilla requested reconsideration of the initial determination. *Id*. at 154-56. On October 16, 2015, the Commissioner denied reconsideration. AR 142-43. Padilla requested a de novo hearing before an Administrative Law Judge on November 16, 2015. AR 162-64.

      The ALJ issued an unfavorable decision against Padilla denying her benefits. *Id*. at 62. Padilla requested the Appeals Council review the ALJ's decision and the Appeals Council denied the request

for review on September 27, 2018. *Id*. at 3-8. On that date the decision became final. On November 5, 2018, Padilla filed a Complaint with the District Court of Nevada seeking judicial review of the ALJ's February 8, 2018 decision. (ECF No. 1-1).

## II. STANDARD OF REVIEW

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. Const. amend. V. Social security applicants and recipients have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). Where, as here, the Commissioner of Social Security renders a final decision denying a person benefits, the District Court must review the Commissioner's decision to determine whether it accords with the Due Process Clause. *Eldridge*, 424 U.S. at 340; 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review is limited. The Court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1193 (9th Cir. 2004); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) (defining "a mere scintilla" of evidence). If the evidence supports more than one interpretation, the court must uphold the Commissioner's

interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This means that the Commissioner's decision will be upheld if it has any support in the record. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision if the evidence preponderates against it).

## III. DISCUSSION

Padilla appeals the Commissioner's decision on several grounds. First, Padilla argues that there is no substantial evidence to support the Commissioner's finding that plaintiff is not disabled and is able to perform substantial gainful activity. (ECF No. 1 at 3). Second, Padilla argues she is disabled and has been continuously disabled as defined in the Social Security Act. *Id*. Padilla alleges disability because the symptoms she experiences related to the removal of her meningioma tumor in her brain, including severe headaches, confusion, bad coordination, and left side numbness which prevented her from returning to past work as a hair stylist. AR 289, 295.

Padilla alleges: (1) the ALJ failed to articulate clear and convincing reasons for rejecting her testimony and (2) the ALJ failed to explain how Padilla could safely perform past work as a hair stylist that requires a high degree of motor coordination. (ECF No. 13).

***I. Whether the ALJ articulated clear and convincing reasons for rejecting Padilla's testimony concerning pain, symptom, and level of limitation.***

If the Commissioner decides to discount the claimant's testimony regarding his or her subjective symptoms, the Commissioner must engage in a two-step analysis before finding the claimant's testimony lacks credibility. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment

"which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted).

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). An ALJ may consider a claimant's reputation for truthfulness and inconsistencies in the claimant's testimony when determining credibility. *Burch*, 400 F.3d at 680. However, this court cannot affirm an agency's decision on a ground an agency did not invoke in making its decision originally. *See Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001).

The ALJ correctly applied the two-step procedure that is required to discount a claimant's testimony. (*See* Admin. Rec. at 70). First, the ALJ identified an underlying medically determinable impairment.

The ALJ found that Padilla has a combination of severe impairments consisting of status post resection of benign brain tumor (meningioma), with no recurrence, and osteoarthritis. AR 67. The ALJ decided that the impairment did not meet or equal any "listed" impairment. AR 69, ¶ 4 citing 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ assessed Padilla as retaining the residual functional capacity to perform the demands of light work as defined in 20 C.F.R. §§ 404.1567 and 416.967 but with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; frequently climb ramps/stairs, but never climb

ladders/ropes/scaffolds; frequently balance and stoop; occasionally kneel, crouch, and crawl, and; avoid concentrated exposure to hazards, such as machinery and heights. (AR 69).

Padilla argues that the ALJ erred in concluding that she is not disabled because the ALJ failed to articulate clear and convincing reasons for rejecting the pain and limitation testimony. The ALJ rejected Padilla's symptom testimony because Padilla's 2016 and 2017 brain MRI's show no recurrence of the hemangioma or other significant abnormalities. AR 71. The ALJ rejected Padilla's testimony about upper extremity difficulties because the EMG was negative for carpal tunnel. AR 70. Padilla argues that the ALJ failed to address her argument that Padilla's 2016 brain MRI, showing likely post-operative encephalomalacia in the region containing Padilla's primary motor and sensory area, might have impacted her ability to coordinate her hands. The ALJ rejected Padilla's testimony because examinations conducted by Padilla's primary care providers showed she had no neurological or musculoskeletal issues, no provider noted difficulty with ambulation or that she needed an assistive device, and because post-operative exams showed "marked functional improvements." AR 71.

The Court finds that the ALJ based her determination on substantial evidence in the record. The ALJ provided clear and specific reasons for rejecting Padilla's testimony. The Court finds that substantial evidence supports the ALJ's rejection of Padilla's testimony. Congress expressly prohibits granting disability benefits based on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 404.1529(a) (an ALJ will consider all of a claimant's statements about symptoms including pain, but statements about pain or other symptoms "will not alone establish" claimant's disability). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).3 An ALJ is required to make specific findings regarding the consistency of a

5

claimant's alleged symptoms with the medical and other evidence. Social Security Ruling (SSR) 16-3p, available at 2017 WL 5180304 (decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms"); *Thomas*, 278 F.3d at 958 (citation omitted).

The medical record supports the ALJ's finding that Plaintiff's functioning improved after surgery. A few weeks prior to the alleged onset date, a neurological evaluation revealed slight weakness in Plaintiff's left foot (AR 368). An MRI of Plaintiff's brain revealed a tumor (AR 371-72). Randell Powell, M.D., examined Plaintiff prior to surgery, and the only abnormalities noted related to Plaintiff's left foot (AR 385-86). Dr. Powell opined that some post-operative left leg weakness would remain after surgery, but would be treated with some physical therapy (AR 386).

Immediately after surgery to remove the tumor (AR 399-400), Dr. Powell noted some residual left leg numbness, but stated that Plaintiff otherwise did "extremely well" (AR 378). She participated in physical therapy, could walk independently, and was discharged three days after surgery (AR 378). A few weeks later, Dr. Powell noted that Plaintiff was "doing well" (AR 380). In July 2015, Dr. Powell noted that Plaintiff should probably wait a month before returning to work, and had no problem with Plaintiff performing outpatient physical therapy if she wanted (AR 379).

Plaintiff alleges that she has poor motor coordination and continued left foot issues, but four months after surgery her only issue appeared to be headaches. In August 2015, Shahab Kidwai, M.D., examined Plaintiff and noted that her cranial nerves were normal, a motor examination revealed full strength in all muscle groups, fine motor movements in both hands were normal, coordination was normal, and her gait was unremarkable despite a slightly unsteady station (AR 405). Dr. Kidwai stated that Plaintiff's left leg weakness had improved, there was no motor weakness, and no difficulty walking (AR

405). Dr. Kidwai opined that treatment for her daily tension headaches would allow Plaintiff to "perform her usual professional work as a haircutter" (AR 405). In March 2016, Dr. Powell noted that Plaintiff had normal ranges of motion, gait, sensory ALJ Padilla's activities of daily living: drives, including to the hearing; smokes cigarettes daily; drinks wine occasionally; lived alone until her mother passed away; currently lives with her sister in law; washes dishes; goes to the store; cooks; manages her funds; performs personal care. AR 70.

Dr. Powell also stated that a recent MRI showed no recurrence of the brain tumor (AR 419, 507-08). Plaintiff stated that she was doing well, her leg was stronger, and she denied headaches (AR 418). She later endorsed some issue with headaches, and took medication for them (AR 459, 462).

The ALJ stated that repeat MRIs of the brain in 2016 and 2017 showed no recurrence of the hemangioma or other significant abnormalities. Dr. Powell was pleased with the result and advised Padilla to return after two years for a follow up. (AR 71). The ALJ also stated that contrary to her testimony of ongoing neurological issues, exams with her primary care provider also showed that Padilla has no neurological or musculoskeletal issues. (Ex 10F, 12F). The ALJ stated that none of Padilla's providers noted difficult ambulation or that she needed the use of an assistive device to walk, especially after the resection. For pain complaints, Padilla was prescribed medications including acetaminophen and/or a muscle relaxer, with no adverse side effects. (AR 71).

Based on the above, the ALJ has provided clear and convincing reasons to discount Plaintiff's testimony concerning pain, symptom, and level of limitation.

## II. Whether the ALJ failed to explain how Padilla could safely perform past work as a hair stylist that requires a high degree of motor coordination.

The ALJ found Padilla had severe impairments of status post resection of benign brain tumor (meningioma), with no recurrence, and osteoarthritis. (AR 67). The ALJ assessed Padilla could perform a

7

limited range of light work, standing and walking six hours and sitting six hours in an eight-hour day. (AR 69). The ALJ found Padilla could perform past work as a hair stylist, as generally performed. (AR 72).

Padilla argues that she does not the motor coordination necessary to perform work as a hair stylist because she has impaired coordination. Padilla argues that the ALJ failed to explain how she could safely work as a hair stylist that requires a high degree of motor coordination. Padilla argues that a hair stylist must be able to coordinate eyes and hands to rapidly and accurately make precise cuts with barber scissors. An individual using barber scissors to professionally trim hair – hair near patron's ears and eyes – should have unimpaired motor coordination. (ECF NO. 13).

Padilla states that according to The Dictionary of Occupational Titles (DOT), a hair stylist stand more than six hours per day, as generally performed. The Dictionary of Occupational Titles (DOT) narrative description of hair stylists describes duties that require a hair stylist to have a full view of a client's head in order to perform, such as, "Studies facial features of patron or performing artist and arranges, shapes, and trims hair to achieve desired effect, using fingers, combs, barber scissors, hair-waving solutions, hairpins, and other accessories.

The court finds that substantial evidence supports the ALJ's assessment of Padilla's residual functional capacity to perform work at a light exertional level with non-exertional physical restrictions reasonable and necessary to minimize symptoms and for safety reasons.

The ALJ found that Padilla is capable of performing past relevant work as a hair stylist. AR 71-72. This work does not require the performance of work-related activities precluded by Padilla's residual functional capacity (20 CFR 404.1565 and 416.965). *Id.*

Once the ALJ determines a claimant's RFC, she then compares this functional capacity with the job duties of the claimant's previous work. 20 C.F.R. § 404.1520(f). The question is whether the RFC allows the claimant to perform "[t]he actual functional demands and job duties of a particular past relevant

job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Plaintiff is not disabled if she can perform her past relevant work as she actually performed it or as the work is generally performed. 20 C.F.R. § 404.1560(b)(2); SSR 82–61, 1982 WL 31387; SSR 96–8p, 1996 WL 374184; *Pinto*, 249 F.3d at 844-45. Plaintiff has the burden to prove that she cannot perform her past relevant work. See 20 C.F.R. § 404.1520(e); *Barnhart v. Thomas*, 540 U.S. 20, 25, 124 S.Ct. 376, 379 (2003) ("unless [claimant] shows that he cannot [perform past relevant work], he is determined not to be disabled"). The regulations permit an ALJ to look to the vocational expert's testimony and the DOT in order to determine whether a claimant may perform her past work. 20 C.F.R. § 404.1560(b)(2).

The vocational expert testified that Plaintiff could perform past relevant work was as a hair stylist, DOT 332.271-018, which was skilled, light exertion work (AR 100). The VE further testified that a person limited to a range of light work, including standing/walking or sitting for six hours each, could perform Plaintiff's past relevant work as a hair stylist (AR 100). The VE testified that her testimony was consistent with the DOT (AR 102).

Padilla argues that there is a conflict between her alleged poor coordination and the DOT description of her past relevant work as a hair stylist. Pl.'s Brief at 19-21. The Commissioner concedes that both common sense and the DOT dictate that the occupation of hair stylist requires motor coordination.

Padilla argues that she cannot perform this work because, as it is generally performed, it requires more than six hours of this activity. Padilla argues that the DOT actually requires more than six hours of walking or standing per day based on her interpretation of the DOT as augmented by the Occupational Information Network (O*NET). (ECF No. 13 at 21-23).

O*NET is not listed as a source of administrative notice that the agency uses, but the DOT is

listed. 20 C.F.R. § 404.1566(d). The ALJ only needs to resolve conflicts between VE testimony and one source - the DOT (and its companion publication the Selected Characteristics of Occupations). *See* SSR 00-4p, 2000 WL 1898704 (Purpose: "Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs … and information in the [DOT], including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)"). (ECF No. 16 at 14).

Plaintiff has not, however, established that she had any residual motor coordination issues after her benign tumor was removed. Four months after her surgery Dr. Kidwai examined Plaintiff and noted that her cranial nerves were normal, a motor examination revealed full strength in all muscle groups, find motor movements in both hands were normal, coordination was normal, and her gait was unremarkable despite a slight steady station (AR 405).

Substantial evidence supports the ALJ's determination that Plaintiff has nonsevere impairments, which do not significantly limit the physical or mental ability to do basic work activities, including headaches, and anxiety. Plaintiff's headaches were managed by the Plaintiff's primary care provider. (Ex 10F, 12F, 14F/4), and not by a neurologist. Here, the ALJ applied the correct legal standard.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Padilla's Motion to Remand (ECF No. 13) is DENIED.

IT FURTHER ORDERED that the Cross Motion to Affirm (ECF No. 16) is GRANTED.

DATED this 16th day of March, 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE